**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW DALE WEIRICH, ) | No. ED CV 10-51-PLA |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 27, 2010, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on February 24, 2010, and February 26, 2010. Pursuant to the Court's order, the parties filed a Joint Stipulation on October 7, 2010, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 11, 1965.  [Administrative Record ("AR") at 39, 87.]  He has obtained a GED, and has past work experience as a construction and maintenance worker.  [AR at 25, 92-93, 96, 101, 121.]

Plaintiff protectively filed his application for Supplemental Security Income payments on July 24, 2007, alleging that he has been unable to work since October 5, 2006, due to back problems.  [AR at 87-97.]  After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 41-49.]  A hearing was held on May 13, 2009, at which time plaintiff appeared with counsel and testified on his own behalf.  A vocational expert also testified. [AR at 18-38.]  On September 2, 2009, the ALJ determined that plaintiff was not disabled.  [AR at 6-17.]  When the Appeals Council denied plaintiff's request for review of the hearing decision on November 18, 2009, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-4.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u> If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u> If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that he is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a <u>prima</u> <u>facie</u>

1   case of disability is established.  The Commissioner then bears the burden of establishing that the

2   claimant is not disabled, because he can perform other substantial gainful work available in the

3   national economy.   The determination of this issue comprises the fifth and final step in the

4   sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

5   at 1257.

6

7   **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

8           In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial

9   gainful activity since July 24, 2007, the application date.  [AR at 11.]   At step two, the ALJ

10  concluded that plaintiff has the severe impairment of "lumbar spine disorder, status post

11  laminectomy." [Id.]  At step three, the ALJ concluded that plaintiff's impairment does not meet or

12  equal any of the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff retained the

13  residual functional capacity ("RFC")[1] "to perform a limited range of sedentary exertion.  [Plaintiff]

14  can lift and carry up to 10 pounds on an occasional basis.  He can sit for 30 minutes at a time,

15  then stand and stretch for 1-2 minutes before sitting again, for a total of 8 hours out of an 8-hour

16  work day.  He can stand and walk for 15 minutes at a time, for a total of 2 hours out of an 8-hour

17  work day.  He would need to lie down during his lunch break for 30-60 minutes." [Id.]  At step four,

18  the ALJ concluded that plaintiff has no past relevant work.  [AR at 15.]  At step five, using the

19  Medical-Vocational Rules as a framework and the vocational expert's testimony, the ALJ

20  concluded that "there are jobs that exist in significant numbers in the national economy that

21  [plaintiff] can perform." [AR at 15-16.]  Accordingly, the ALJ found that plaintiff is not disabled.

22  [AR at 16-17.]

23  /

24  /

25  /

26  ───────────────

27      [1]   Residual functional capacity ("RFC") is what a claimant can still do despite existing
    exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.
28  1989).

4

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ did not properly consider: (1) plaintiff's subjective complaints and credibility; and (2) the vocational evidence.  [Joint Stipulation ("JS") at 3.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

### A.     PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ failed to consider his subjective complaints concerning the extent of his physical symptoms and did not properly reject plaintiff's credibility.  [JS at 3-10.]

At the hearing, plaintiff testified that he is unable to work due to back pain, leg numbness, and fatigue.  [AR at 21-22, 25-26, 29-32.]  Specifically, plaintiff testified that he becomes fatigued and has to go to bed after standing to wash dishes; his left leg goes numb if he sits in a non-reclining chair for more than 15 to 20 minutes; he can sit in a reclining chair for two to three hours; if he completes an activity like vacuuming a room, he has to lie down for 30 to 45 minutes afterwards; he takes three to four pain pills each day; he goes to church once a week (during which he has to alternate between sitting and walking around); and approximately four or five times a month, his symptoms are so bad that he has to stay in bed all day.  [AR at 25-26, 29.] Plaintiff also testified that he received back surgery when he was incarcerated in October 2006, and that prior to his surgery, he used a cane and had difficulty walking due to numbness in his right leg.  Plaintiff explained that his symptoms improved after his back surgery, because he was able to walk again without the assistance of a cane, but that his level of pain has not improved. [AR at 26-29, 34.]

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it).  The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart,

331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  "It's not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918.  Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations.  See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[2] the ALJ was required to justify his credibility determination with clear and convincing reasons.  See Benton, 331 F.3d at 1040.  In the decision, despite finding that plaintiff's medical condition would reasonably produce the alleged symptoms, the ALJ found plaintiff's statements "concerning the intensity, persistence and limiting effects" of his symptoms to be "not credible to the extent they are inconsistent with the ... residual functional capacity assessment." [AR at 13.]  The ALJ discounted plaintiff's subjective complaints of the limiting effects from his impairment because, among other reasons, plaintiff (1) did not seek medical treatment that was available to him; (2) has a history of incarceration for forgery; and (3) has a poor employment record.  [See AR at 15.]  As discussed below, the Court

---

[2]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

1    finds that the ALJ has provided clear and convincing reasons for discounting plaintiff's subjective

2    testimony.[3]

3          First, the ALJ properly rejected plaintiff's credibility due to his failure to seek available

4    medical treatment.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (an ALJ may reject

5    plaintiff's testimony of disabling limitations or pain if plaintiff failed to seek treatment or follow a

6    prescribed course of treatment without a good reason).  As the ALJ noted in the decision, plaintiff

7    testified that after he was released from prison on January 8, 2007, he applied for a medically

8    indigent insurance program in March 2007 for which he was approved in June 2007.  [AR at 15,

9    30.]  Nonetheless, plaintiff did not seek medical treatment for back pain after his incarceration until

10   August 4, 2008 (i.e., more than a year after his June 2007 approval for indigent insurance and his

11   July 2007 application for Supplemental Security Income payments).  [See AR at 14, citing AR at

12   178.]  See Flaten v. Sec'y of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ

13   properly found a claimant's complaints of continuous disabling back pain not credible where she

14   did not seek treatment for back pain during the years after her first back surgery).  The ALJ also

15   rejected plaintiff's excuse for failing to receive medical treatment for his allegedly disabling back

16   pain, despite having been approved for free medical treatment, on the basis that he did not know

17   that he had been approved for medical benefits.  [AR at 15, 30.]  Specifically, the ALJ correctly

18   noted that plaintiff's medical records indicate that he had received free medical treatment in the

19   past.  [AR at 15; see, e.g., AR at 186-225 (plaintiff's medical treatment records from 2002 to 2004

20   indicating that he received medical care for back pain that was provided by San Bernardino

21   County).]  The ALJ thus concluded that plaintiff "should have known that any public health facility

22   will treat those in need of care regardless of the ability to pay[,]" and that "[h]is failure to follow

23   through with treatment creates an inference [plaintiff] was not in a great deal of pain."  [AR at 15.]

24   The Court concludes the ALJ properly rejected plaintiff's credibility on this ground as well.  See,

25   e.g., Narkter v. Astrue, 2010 WL 532344, *5-6 (C.D. Cal. Feb. 11, 2010) (ALJ properly rejected

26

27   _____

28        [3]  As these reasons are sufficient to discount plaintiff's testimony, the Court need not address
     the rest of the reasons provided by the ALJ for finding plaintiff not credible.

1   plaintiff's allegation that "he was not able to obtain treatment as he had 'no medical' and gets

2   'turned down' at hospitals in his area," reasoning that "plaintiff has had access to treatment

3   through County clinics, is aware of such facilities, and demonstrated an ability to access medical

4   care, which has included a range of testing.").

5        Next, the ALJ properly relied on plaintiff's past incarceration for forgery as a reason for

6   finding plaintiff incredible.  [AR at 15.]  At the hearing, plaintiff admitted that he has twice been

7   convicted and imprisoned for crimes involving forgery.  [See AR at 32-33.]  An ALJ may rely on

8   a claimant's felony convictions for crimes of moral turpitude when finding the claimant's subjective

9   complaints incredible.  See Albidrez v. Astrue, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (felony

10   convictions involving moral turpitude, such as showing false identification to a peace officer, "are

11   a proper basis for an adverse credibility determination").   Under California and Ninth Circuit

12   precedent, forgery is a crime of moral turpitude.  See Baer v. Norene, 79 F.2d 340, 341 (9th Cir.

13   1935) (per curiam) ("It is clear that [forgery] involve[s] moral turpitude."); Morasch v. I.N.S., 363

14   F.2d 30, 31 (9th Cir. 1966) ("[t]here is no doubt that ... forgery" is a crime of moral turpitude);

15   People v. Parrish, 170 Cal.App.3d 336, 349, 217 Cal.Rptr. 700 (Cal.App. 5 Dist. 1985) ("[c]learly,

16   forgery involves elements that go to honesty and truthfulness. ... [and] all priors which necessarily

17   involve dishonesty ... involve moral turpitude").  Accordingly, as plaintiff's two prior convictions and

18   prison terms for forgery involved crimes of moral turpitude, it was appropriate for the ALJ to

19   discount the credibility of his subjective complaints on that basis.  See Simmons v. Massanari, 264

20   F.3d 751, 754, 756 (8th Cir. 2001) (finding that an ALJ properly rejected a claimant's subjective

21   complaints, in part, because he served two prison terms for forgery).

22        Finally, the ALJ's rejection of plaintiff's credibility concerning the limiting effects of his

23   impairment on the basis of plaintiff's poor employment history was likewise proper.   In the

24   decision, the ALJ noted that plaintiff's lifelong earning record reflects "sparse earnings, with many

25   years of no earnings" and that he has "never had a close nexus to the work place."  [See AR at

26   15, citing AR at 86.]  Plaintiff does not challenge the ALJ's characterization of his work history.

27   Indeed, the record indicates that plaintiff earned no income between 1999 and 2009 and that the

28   most he has ever earned in one year in his entire life was $6,393.40.  [AR at 86.]  "An ALJ may

properly consider a claimant's poor or nonexistent work history in making a negative credibility determination."  Albidrez, 504 F.Supp.2d at 822 (citing Thomas, 278 F.3d at 959 (an ALJ may properly rely on a claimant's "extremely poor work history," showing "little propensity to work in [his] lifetime," as a reason for finding the claimant's subjective complaints incredible); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ( "A lack of work history may indicate a lack of motivation rather than a lack of ability."); Schaal v. Apfel, 134 F.3d 496, 502-03 (2d Cir. 1998) (a claimant's poor work history is a proper reason for an ALJ to find a claimant incredible)); see also Social Security Ruling[4] 96-7p, at *5 (in assessing a claimant's credibility about pain or other symptoms and the limiting effects of such symptoms, the ALJ must consider all of the evidence in the case record, including the claimant's "prior work record and efforts to work").

To properly reject a plaintiff's alleged limitations, the ALJ must provide reasoning "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ did so here, and his credibility determination is entitled to great deference by this Court, as the Court's "role is not to second-guess that decision."  See Fair, 885 F.2d at 603; see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  Remand is not warranted for this claim.

**B.      THE ALJ'S CONSIDERATION OF THE VOCATIONAL EVIDENCE**

Plaintiff contends that the ALJ did not properly consider the vocational expert's testimony in finding plaintiff not disabled.  [JS at 17-18.]  At the hearing, the vocational expert testified that a person who could read, write, and do math and had plaintiff's level of education and RFC could perform jobs existing in substantial numbers in the national economy.  [AR at 35-36.]  The vocational expert further testified that the same person with the added limitations of needing to lie

---

[4]     Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

down two or three times during the day and/or needing to miss four days of work per month could not work. [JS at 17, citing AR at 37.] Plaintiff argues that based on plaintiff's testimony, the evidence shows that he "would have to clearly lie down 2 or 3 times a day each day of the work week ... and that he would also be missing at least 4 days per month," and that "[t]he ALJ has provided absolutely no rational[e] whatsoever justifying his apparent decision to disregard [p]laintiff's testimony regarding his need to lie down 2 to 3 times a day" or miss work "4 or 5 times a month." [JS at 17.] The Court disagrees.

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence," including descriptions of subjective symptoms, such as pain, provided by plaintiff. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5, *7. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).

For the reasons expressed above, the ALJ provided sufficiently clear and convincing reasons for finding plaintiff's subjective complaints not credible to the extent they conflict with the ALJ's RFC determination. Accordingly, the Court finds that the ALJ properly disregarded plaintiff's contention -- supported solely by his testimony -- that he would need to lie down two or three times during the workday and/or miss four or more days of work each month due to his subjective symptoms. As such, the ALJ properly considered the vocational expert's testimony in concluding that plaintiff is not disabled. Remand is not warranted on this issue.

/

/

/

/

/

# VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 15, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE